UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEMAJIO JEROME ELLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-00878-JPH-KMB |
| | ) |
| JOHN NWANNUNU Dr., | ) |
| KNIESER Dr., | ) |
| WEXFORD OF INDIANA, LLC, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Demajio Ellis, an individual incarcerated by the Indiana Department of Correction ("IDOC"), brought this civil rights complaint against medical providers at Pendleton Correctional Facility and New Castle Correctional Facility alleging they were deliberately indifferent to his chronic back and hand pain.

Defendants Dr. John Nwannunu, Dr. Martial Knieser, and Wexford of Indiana, LLC ("Wexford Defendants") have moved for summary judgment for the timeframe when Mr. Ellis was under Wexford's care. Dkt. 85. Dr. Nwannunu moves for summary judgment for the period when Mr. Ellis was under his care after Centurion Health of Indiana, LLC, assumed its role as IDOC's contracted healthcare service provider.[1] Dkts. 85, 89. For the reasons below, the motions are **granted**.

---

[1] Claims against Defendants GEO Group, Inc.; Dr. Carter; Nurse Practitioner Vernon Osburn; and Centurion were previously dismissed. Dkt. 106.

1

# I.
# Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Ellis and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

Mr. Ellis has been incarcerated in the IDOC since 2013. Dkt. 87-4 at 3 (9) (Ellis Dep.).[2] Mr. Ellis has been transferred among several different IDOC facilities. *Id.* at 4 (10). The claims in this case relate to his medical care between June 2020 and July 2022 while he was housed at Pendleton Correctional Facility ("Pendleton") and New Castle Correctional Facility ("New Castle"). *Id.*

Wexford was IDOC's contracted healthcare service provider until June 30, 2021; Centurion assumed the role the next day. *See Stewart v. Wexford*, No. 1:20-cv-1818-TWP-TAB, 2022 WL 3597295, at *2 (S.D. Ind. Aug. 23, 2022) (citing https://www.prnewswire.com/news-releases/centurion-health-provides-correctional-health-for-indiana-department-of-correction-301331594.html). Mr. Ellis's claims span both service providers.

Dr. Martial Knieser was a physician licensed to practice in the State of Indiana from 1978 to 2022, when he retired. Dr. Knieser was employed by Wexford as a physician at Pendleton from March 2, 2020, through June 30, 2021. Dkt. 87-2 at ¶¶ 1-2 (Dr. Knieser Aff.).

Dr. John Nwannunu is a physician who was employed by Wexford as a

---

[2] There are four pages of deposition per each page of the PDF. The Court cites first to the PDF page, and then to the deposition page in parentheses.

physician at New Castle from February 3, 2020, through June 30, 2021, and has since been employed by Centurion. Dkt. 87-3 at ¶ 2; dkt. 90-1 at 8-10 (Centurion Medical Records).

### B. Mr. Ellis's Injury History and Medical Care under Wexford

Mr. Ellis testified that he hurt his back when he passed out in his cell and fell in July 2019, and that he has felt pain in his back since then. Dkt. 87-4 at 6 (19). No one witnessed this incident. *Id.*; dkt. 87-1 at 1 (Wexford Medical Records). Mr. Ellis attested that since he fell, he has experienced pain, cramps, and numbness, and that his back pain affects his ability to stand, walk, exercise, and sleep. Dkt. 102-1 at 2 (Ellis Aff.).

Mr. Ellis injured his hand in 2011 during an altercation with staff at the Saint Joseph County Jail. Dkt. 87-4 at 6 (20). As a result, his ring finger on his right hand is crooked and "has a lumpy, bumpy, split feeling." Dkt. 102-1 at 4. Mr. Ellis attested that his hand often hurts, and he cannot squeeze his hand tightly or write for long periods of time due to the discomfort from the old injury. *Id.* at 4–5.

Before Dr. Knieser ever saw Mr. Ellis, he was evaluated by two nurse practitioners and another physician after his 2019 fall, and none of those providers ever diagnosed Mr. Ellis with a serious back abnormality or injury. Dkt. 87-2 at ¶¶ 5-14; dkt. 87-1 at 1-37.

Dr. Knieser had two relevant encounters with Mr. Ellis. Dkt. 87-2 at ¶¶ 17, 19. On June 29, 2020, Dr. Knieser saw Mr. Ellis for reported musculoskeletal pain. Dkt. 87-1 at 45. Dr. Knieser ordered x-rays of Mr. Ellis's hand and back.

4

*Id.* at 46. The back x-ray was normal. *Id.* at 49. The hand x-ray revealed a "[m]ild residual deformity fifth metacarpal . . . from remote fracture." *Id.* at 50. Dr. Knieser attested that with any fracture, a patient is likely to experience some level of pain for the rest of his life. Dkt. 87-2 at ¶ 19.

Dr. Knieser saw Mr. Ellis the second time on November 24, 2020, for follow-up care for the hand injury. *Id.* at ¶ 19; dkt. 87-1 at 51-53. Dr. Knieser advised Mr. Ellis to use ice when he experienced hand pain. Dkt. 87-2 at ¶ 19.

Mr. Ellis was seen several more times while under Wexford's care. He reported back pain in March 2021 and was seen by a nurse. Dkt. 87-1 at 54. He described the pain as "hot sharp pains" that he felt intermittently (including when he jumped down from the top bunk bed), and he reported that over-the-counter pain medications like ibuprofen, Tylenol, and naproxen did not help. *Id.* at 56. The nurse advised him to climb down, rather than jump down, from his bunk bed, to use heat and ice, and to do certain stretches. *Id.* When Mr. Ellis expressed disappointment that he did not receive prescription pain medication, the nurse advised him that the goal was to have him try different activities to reduce pain without resorting to medication. *Id.*

Dr. Nwannunu did not treat Mr. Ellis while he was employed by Wexford. Dkt. 87-3 at ¶ 5.

### C. Mr. Ellis's Medical Care under Centurion

Mr. Ellis first saw Dr. Nwannunu on July 20, 2021, due to his hand and finger pain. Dkt. 90-1 at 8-9. Dr. Nwannunu prescribed Mr. Ellis extra strength Tylenol. *Id.* at 9.

5

Mr. Ellis saw Nurse Wigal for reports of back pain on September 30, 2021. Dkt. 90-1 at 18. During this visit, he told her, "I hate to tell you the bad news, but you are going to be included in my lawsuit for violating my rights[.]" *Id.* Nurse Wigal tried to redirect Mr. Ellis to his report of back pain, and he explained that his back hurt at a level of "10/10" every day and over-the-counter pain medication did not help. *Id.* Mr. Ellis refused to allow Nurse Wigal to examine his back. *Id.* Nurse Wigal noted that Mr. Ellis's "gait was steady and normal" and that he had no limp or other signs of distress. *Id.* Despite the lack of outward signs of an injury, Nurse Wigal referred Mr. Ellis to Dr. Nwannunu. *Id.*

Dr. Nwannunu saw Mr. Ellis a week later to follow up. *Id.* at 20. Dr. Nwannunu noted no specific concerns or evidence of injury or severe pain during the examination, but he prescribed Mr. Ellis Tylenol and ibuprofen for pain as needed. *Id.* at 20-22.

Mr. Ellis had a sick call visit on December 1, 2021, during which he reported that ibuprofen was more helpful than Tylenol to treat his hand pain. *Id.* at 26-27. A nurse reported those preferences to Dr. Nwannunu on December 11, 2021, and Dr. Nwannunu called the medical administrative assistant to order the switch from Tylenol to ibuprofen. *Id.* at 28. This was the last interaction Dr. Nwannunu had with Mr. Ellis for the relevant timeframe. *See* dkt. 90-1.

Mr. Ellis was transferred to Pendleton on July 19, 2022. *Id.* at 42-47. Upon his transfer, Mr. Ellis underwent a medical intake assessment during which he was assigned an "A" disability code, indicating no disability or significant physical impairment, and a "G" medical code, which encompasses "any condition

6

or illness in which frequent consultation, evaluation, and/or treatment by medical or nursing personnel is not needed." Dkt. 90-2 at 1, 5 (Centurion Medical Records).[3]

### D. Mr. Ellis's Theories of Liability

Mr. Ellis believed that Wexford had a policy of requiring him to submit two healthcare request forms for the same issue before he could be seen by a doctor. Dkt. 87-4 at 8 (26). He explained:

> Wexford of Indiana LLC . . . has had, used, and encouraged their medical staff, nurses, and doctors to knowingly and intentionally deny, and delay inmates including me the Plaintiff to access to adequate medical care by telling me and other inmates that we can only be seen by a doctor after being seen at least twice or two or more times at medical sick call before[e] access to a doctor, and that I can only be seen for medical sick call for one issue at one time no matter how many medical health issues that I had.

Dkt. 102-1 at 6.

Mr. Ellis testified that he was suing Dr. Knieser because Dr. Knieser did not provide him with adequate care and persisted in ineffective courses of treatment and Dr. Nwannunu because he, too, persisted in ineffective courses of

---

[3] In their recitation of material facts, Centurion Defendants include summaries of Mr. Ellis's therapy sessions, during one of which his therapist noted "minimal insight," "impaired ability to make reasonable decisions," and "grandiose thoughts" with a lack of appreciation for his current situation. Dkt. 90-1 at 12. The context of the "grandiose thoughts" was Mr. Ellis's belief that he was going to be released from imprisonment in five months, despite his earliest release date being in 2033. *Id.* The mental health provider stated that Mr. Ellis's symptoms were consistent with his diagnosis of Antisocial Personality Disorder. *Id.* Neither Dr. Knieser nor Dr. Nwannunu provided any testimony connecting Mr. Ellis's mental health background with his behavior during his medical assessments for his back or hand. While Mr. Ellis's mental health conditions may explain the gulf between his perceived experiences regarding his physical health and the medical providers' observations of his physical condition, the Court would need testimony from a medical expert to make that connection. The Court accordingly declines to discuss this evidence further, given the speculative connection between the issues.

7

treatment and refused to refer him to a specialist. Dkt. 87-4 at 8 at 5 (17) and 7 (22); dkt. 102-1 at 8 (Ellis Aff.).

## III.
## Discussion

Mr. Ellis alleges that Defendants were deliberately indifferent to his serious medical needs as it related to chronic back and hand pain.

### A. Legal Standard

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

When assessing the objective prong, the Court "look[s] for physical injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."

8

*Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016) (cleaned up). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

When assessing the subjective prong, the record must allow a reasonable jury to conclude that Defendants acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Mr. Ellis]'s health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up).

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Mr. Ellis "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). A defendant must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)).

"A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is

9

insufficient, by itself, to establish an Eighth Amendment violation." *Id.* "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean*, 18 F.4th at 241 (internal citations omitted). Deliberate indifference may occur if a medical professional persists in a course of ineffective treatment or chooses "an easier and less efficacious treatment without exercising professional judgment." *Petties*, 836 F.3d at 729−30 (cleaned up).

Here, the Court will assume without deciding that a reasonable jury could find that Mr. Ellis had a serious medical need and therefore turns to whether a reasonable jury could find that any defendant was deliberately indifferent to his medical needs.

### B. Dr. Knieser

There is no designated evidence from which a reasonable jury could conclude that Dr. Knieser was deliberately indifferent to Mr. Ellis's reports of pain.

Dr. Knieser saw Mr. Ellis twice during the relevant timeframe. During his first encounter, Dr. Knieser ordered x-rays, demonstrating that, rather than disregarding a substantial risk of harm to Mr. Ellis, he took the reports of pain seriously. Those x-rays revealed no acute injuries, so at that point, it was within his exercise of medical judgment not to order additional tests or direct an aggressive course of treatment. *See Jackson v. Anderson*, 770 F. App'x 291, 293 (7th Cir. 2019) (noting that medical professionals are "not required to adopt [the

plaintiff's] diagnosis or demands for an x-ray once they rule out any signs of a broken bone from their own examinations") (citing *Pyles*, 771 F.3d at 409).

During Dr. Knieser's second encounter with Mr. Ellis, they discussed his hand pain. Dkt. 87-1 at 51–53. Dr. Knieser advised Mr. Ellis to use ice when he experienced pain. Dkt. 87-2 at ¶ 19. He attested that it is common for an individual to suffer from pain from healed bone fractures. Dkt. 87-1 at ¶ 19. "[D]octors are not deliberately indifferent when they are unable to eliminate completely a patient's pain." *Leiser v. Hoffman*, No. 20-2908, 2021 WL 3028147, *3 (7th Cir. July 19, 2021) (unreported) (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). There is no designated evidence from which a reasonable jury could infer that this conservative treatment recommendation for an old injury demonstrated an "absence of professional judgment." *Petties*, 836 F.3d at 729.

### C. Dr. Nwannunu

Similarly, there is no designated evidence from which a reasonable jury could conclude that Dr. Nwannunu was deliberately indifferent to Mr. Ellis's reported pain.

First, there is no designated evidence that Dr. Nwannunu ever treated Mr. Ellis when he was employed by Wexford. A defendant must be personally involved in an alleged constitutional deprivation to be held liable under § 1983. *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023). Thus, he is entitled to summary judgment as to the timeframe he was employed by Wexford.

11

Dr. Nwannunu did see Mr. Ellis when he was employed by Centurion. At his first appointment with Mr. Ellis on July 20, 2021, he examined Mr. Ellis's hand (as that was the only reported complaint) and immediately ordered a prescription for extra strength Tylenol for Mr. Ellis. Dkt. 90-1 at 9.

Mr. Ellis subsequently submitted a healthcare request form regarding his back pain. In response, he was assessed by Nurse Wigal on September 30, 2021. Dkt. 90-1 at 16–18. During that visit, Nurse Wigal did not observe any outward signs that Mr. Ellis was experiencing pain and Mr. Ellis refused to allow her to physically examine him. *Id.* Nonetheless, Nurse Wigal referred Mr. Ellis to Dr. Nwannunu for a follow-up appointment. *Id.*

Dr. Nwannunu conducted a physical examination of Mr. Ellis and did not note any specific concerns or evidence of injury. *Id.* at 20–22. Still, in response to Mr. Ellis's complaints of pain, Dr. Nwannunu gave him prescriptions for Tylenol and ibuprofen. *Id.* at 21. Although this was Dr. Nwannunu's last in-person interaction with Mr. Ellis, he later modified Mr. Ellis's prescription to be ibuprofen instead of Tylenol based on Mr. Ellis's report that ibuprofen helped more. *Id.* at 28.

The undisputed designated evidence reflects that Dr. Nwannunu exercised his professional judgment when he provided Mr. Ellis over-the-counter pain medication in response to Mr. Ellis's complaints of ongoing pain in his hand and back. Mr. Ellis believed that Dr. Nwannunu should have done something different—either prescribed different medication or referred him to a specialist—but he has no right to demand a specific course of treatment or care. *Arnett v.*

12

*Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Mr. Ellis's disagreement with Dr. Nwannunu's treatment decisions does not show deliberate indifference, especially considering the absence of designated evidence supporting the inference that Dr. Nwannunu's treatment decisions were not based on his medical judgment. *Johnson v. Dominguez*, 5 F.4th 818, 826 (7th Cir. 2021); *Pyles*, 771 F.3d at 409.

### D. Wexford

To prevail on a 42 U.S.C. § 1983 claim against a private entity acting under color of state law—as Wexford was here—"a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal policy, practice, or widespread custom; (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations; and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Mr. Ellis testified that Wexford had a policy that required inmates to be seen two times by a nurse before referring the inmate to a doctor. Even if such a policy existed, however, Mr. Ellis has failed to demonstrate a triable issue of fact as to *any* alleged constitutional violation, so he cannot succeed on a claim against Wexford. *See Gaetjens v. City of Loves Park*, 4 F.4th 487, 495 (7th Cir. 2021) (an entity "cannot be liable under *Monell* when there is no underlying constitutional violation").

13

# IV.
# Conclusion

Wexford Defendants' and Dr. Nwannunu's motions for summary judgment are **granted**. Dkts. [85], [89]. Final judgment consistent with the Court's Order of Dismissal as to Certain Defendants, dkt. [106], and this Order shall issue in a separate entry.

**SO ORDERED.**

Date: 9/19/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DEMAJIO JEROME ELLIS
166596
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

All Electronically Registered Counsel